## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EUGENE KIST, )
)
Plaintiff, )
v. ) CIVIL ACTION NO. 3:2006-67
)
ROBERT FATULA, DAVID BRACKEN, ) JUDGE GIBSON
and JOHN DOE, )
)
Defendants. )

## **MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on Defendants' Motion to Dismiss (Document 13-1) pursuant

to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion will be granted

in part and denied in part.

### **JURISDICTION AND VENUE**

This action was initiated pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 for alleged

violations of various rights protected by the First and Fourth Amendments to the United States

Constitution. This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

Supplemental jurisdiction to hear Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367. Venue

is proper in this district pursuant to 28 U.S.C. § 1391(b).

### **FACTUAL BACKGROUND**

Eugene Kist (hereinafter "Kist") filed a complaint against Defendants Robert Fatula, David

Bracken, and John Doe (hereinafter "Fatula," "Bracken" & "Doe", respectively) asserting claims arising

out of the events surrounding Kist's verbal and physical altercation with Fatula on or about May 20, 2004.

Kist's complaint contains six counts. Four of those counts are claims for deprivation of constitutional rights made pursuant to 42 U.S.C. § 1983: Count I, excessive force by Fatula in violation of the Fourth Amendment, Count II, interference with access to courts by Fatula and Bracken in violation of the First Amendment, Count III, false arrest by Fatula and Bracken in violation of the Fourth Amendment, and Count V, civil conspiracy against all defendants under 42 U.S.C. § 1983. Plaintiff's Amended Complaint (Document 15) (hereinafter "P.A.C."), pp. 3, 8-11, 12-13. The remaining two counts are state tort claims for assault (Count IV) and intentional infliction of emotional distress (Count VI) against Fatula. P.A.C., pp. 11-12, 13-14. The following is a summary of the operative facts as alleged by Kist.

"On or about May 20, 2004, [Kist]...was informed that his [longtime female companion] ...and their granddaughter were in a [car accident]. P.A.C., ¶ 17. "[Kist] drove to the scene of the accident[,] where he recognized...Fatula," who was in his police uniform and is alleged to have been working in his official capacity as the Chief of Police for Jackson Township at the accident scene. P.A.C., ¶ 18. Fatula appeared to be "investigating" the car accident for purposes of "police business". P.A.C., ¶ 18. While remaining in his vehicle, Kist lowered "his driver's [side] window and asked...Fatula where the accident had happened and where his lady friend was." P.A.C., ¶ 19. In response, Fatula came upon Kist's vehicle, opened Kist's door, cursed at Kist, and punched him "in the face". P.A.C., ¶ 20. When Kist asked Fatula the reason for his actions, "Fatula sprayed mace in the face of [Kist]...without reason or provovation...." P.A.C., ¶ 21. "Fatula [then] removed [Kist]...from the vehicle, knocked him to the ground[,] and handcuffed [him]...." P.A.C., ¶ 22.

At this juncture, Bracken, who is a Supervisor for Jackson Township, "reached inside of [Kist's]...vehicle, removed a hammer from the passenger side..., threw the hammer onto the ground[,] and

2

stated to...Fatula that he had found the tool that [Kist]...used to assault...Fatula." P.A.C., ¶¶ 7, 23. "Bracken made these statements in an effort to conspire with...Fatula to bring baseless criminal charges against [Kist]...." P.A.C., ¶ 23. "[Kist] was transported to [a local hospital]...for treatment for the injuries he sustained as a result of the [altercation with]...Fatula"; the injuries consisted of "a black eye", "bruising", "scarring[,] and other injuries." P.A.C., ¶ 25.

"Fatula and...Bracken, along with others, subsequently had a meeting to discuss how...Fatula could avoid liability for his actions and to bring baseless criminal charges against [Kist]...." P.A.C., ¶ 25. Fatula had Kist "charged with a number of crimes related to the incident," including, among others, aggravated assault, reckless endangerment, and resisting arrest. P.A.C., ¶ 26. "[Kist] was arrested for these charges on May 23, 2004[1][, and] incarcerated for a period of time before he was released on bail." P.A.C., ¶ 26.

"On May 12, 2005, [Kist]...entered into a plea agreement with the [Cambria County] District Attorney[']s Office," which provided that "all the charges relating to the May 20, 2004 incident with...Fatula were to be dropped" in exchange for a *nolo contendere* plea to a charge of disorderly conduct in an unrelated incident that occurred on May 23, 2004. P.A.C., ¶ 27. Fatula had no involvement in the May 23, 2004 incident. P.A.C. ¶¶, 27-28. "On May 12, 2005, [Kist] signed a document...[with] the docket number [of]...the May 23, 2004 incident[,]...agree[ing] to plead *nolo contendere* to the Charge of Disorderly Conduct." P.A.C., ¶ 28. "[Kist] initialed the bottom of the "Nolo Contendere Explanation of Defendant's Rights" to acknowledge his intention to plead *nolo contendere* to the charge of Disorderly

---

[1]P.A.C. at ¶ 26 reads "May 23, 2006", but it appears this is in error and that May 23, 2004 is the correct date based upon the Court's review of the Complaint as a whole.

3

Conduct [arising out of the May 23, 2004 incident]...." P.A.C., ¶ 28. "[A]fter [Kist]...initialled the document, ...Doe, acting in conspiracy with...Fatula, changed the docket number on the document to the docket number of the charges that [stemmed from the May 20, 2004[2] incident with Fatula]...." P.A.C., ¶ 29. "Doe is an employee of the Cambria County District Attorney['s] Office." P.A.C., ¶ 8. The switching of the docket numbers was done "for the purpose of preventing [Kist]...from later bringing a malicious prosecution claim against...Fatula [for]...the charges arising out of the May 20, 2004 incident...." P.A.C., ¶ 30.

"As a result of the actions of the defendants, [Kist]...has suffered emotional distress in the form of embarrassment, worry, and loss of sleep." P.A.C., ¶ 31.

## PROCEDURAL BACKGROUND

The Court of Common Pleas for Cambria County sentenced Kist to a term of probation and imposed a $200 fine for the charge of disorderly conduct relating to the May 20, 2004 incident involving Fatula. *See* Defendant's Exhibit 1 (Document 14-2), p. 23 and Defendant's Exhibit 2 (Document 14-3), p. 9. Kist later filed a motion with the Court of Common Pleas to withdraw his plea and proceed to a trial by jury. *See* Defendant's Exhibit 4 (Document 14-5), p. 2. The Court of Common Pleas held a hearing on Kist's motion to withdraw his plea and found that denial of Kist's motion would not constitute a "manifest injustice". *See* Defendant's Exhibit 5 (Document 14-6), p. 25, and Defendant's Exhibit 6 (Document 14-7), p. 2. The Court of Common Pleas judge explained to both Kist and his attorney the period of time in which Kist could appeal the judge's denial of his motion to withdraw his *nolo* plea. *See*

---

[2]In P.A.C. at ¶ 29, Kist once again refers to what appears to be an incorrect date, and "May 20, 2004" was inserted to reflect what appears to be the intended date.

4

Defendant's Exhibit 5, p. 25-29. There is no record before this Court of Kist having filed an appeal on the denial of his motion by the Court of Common Pleas to withdraw his *nolo* plea to the May 20, 2004 charges[3], and there is no record of any petition for a writ of *habeas corpus* filed on behalf of Kist in any United States District Court[4].

## ANALYSIS

## I.   SCOPE OF REVIEW AND MATTERS TO BE CONSIDERED

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim for failure to state a basis on which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (quoting *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). These inferences must be viewed "in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). In reviewing a motion to dismiss, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Cal. Pub. Employees' Ret. System v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse*, *supra*). In a § 1983 action, "plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any [Constitutional] right...." *Langford*, 235 F.3d at 847. "In considering a Rule 12(b)(6) motion, we do not inquire whether the plaintif[f] will ultimately prevail, only whether [he

---

[3]*See* Pennsylvania's Unified Judicial System's Appellate Court Web Docket Sheets, http://ujsportal.pacourts.us/WebDocketSheets/PACMSWebDocketSheets.aspx (input "Superior" for "Select a Court Name", "Appeal" for "Docket Type", and "Kist, Eugene" for "Party Name").

[4]*See* PACER, U.S. Party/Case Index, https://pacer.uspci.uscourts.gov/cgi-bin/search_all.pl?puid=01181839024 (input "ALLCOURTS" for "Region" and "Kist, Eugene" for "Party Name").

is]...entitled to offer evidence to support [his]...claim." *Id.* "[O]nce a claim has been stated adequately, it may be supported by a showing of any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, __U.S.__, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929, 945 (2007) (citations omitted). A complaint that states "a plausible entitlement to relief" is the complaint that survives a Rule 12(b)(6) motion, as well as satisfies the Rule 8 pleading requirements. *Id.* at __, 127 S. Ct. at 1964-65, 167 L. Ed. 2d at 940, 942.

Beyond the pleadings, a court "may also consider matters of public record, orders, exhibits attached to the complaint[,] and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994) (citations omitted). *See also Yarris v. County of Del.*, 465 F.3d 129, 134 (3d Cir. 2006) (citations omitted). "'[D]ocument[s] integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). "[A] defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003) (citations omitted).

Fatula and Bracken are correct in asserting that the Court of Appeals for the Third Circuit standard would allow a district court to consider "court docket entries and official court transcripts and documents which relate directly to the legal merits of a claim asserted by Plaintiff," *see* Memorandum in Support of Defendants' Motion to Dismiss (Document 14-1) (hereinafter "M.S.M.D."), p. 7, the rationale being that "the plaintiff is obviously on notice of the contents of the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

6

In this case, Kist is explicitly questioning the validity of the criminal charges brought against him and his *nolo contendere* plea to the charge of disorderly conduct with regard to the May 20, 2004 incident. Kist is therefore on notice of the exhibits that Fatula and Bracken have attached to their motion to dismiss, which consist of a transcript of the hearing for Kist's *nolo contendere* plea to a charge of disorderly conduct as a part of the plea bargain in regard to the May 20, 2004 charges, a criminal docket containing an outline/timeline of events and disposition of charges against Kist, a sentence sheet signed by the judge that explains Kist is pleading no contest to a charge of disorderly conduct, Kist's own motion to withdraw his *nolo contendere* plea, the transcript of the hearing on Kist's motion to withdraw his *nolo contendere* plea, and the order of the court denying Kist's motion. *See* Defendants' Exhibits 1-6 (Documents 14-2 - 14-7). The contents of these documents, particularly the transcript of the hearing for Kist's plea, directly bear on Kist's ability to establish facts that would entitle him to relief. Therefore, this Court is legally entitled to consider them in determining whether to grant Defendants' 12(b)(6) motion.

## II.     BARS TO KIST'S FEDERAL AND STATE CLAIMS

### A.     The *Heck* Doctrine

When a civil rights claim under 42 U.S.C. § 1983 would "impug[n] the validity of the plaintiff's underlying conviction," a plaintiff is precluded from bringing that claim "unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis,* 427 F.3d 197, 209 (3d Cir. 2005) (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994). Kist is alleging four claims under 42 U.S.C. § 1983: one against Fatula for excessive force in violation of the Fourth Amendment (Count I), one against Fatula and Bracken for interference with access to the courts in violation of the First Amendment (Count II), one against Fatula and Bracken for false arrest in

7

violation of the Fourth Amendment (Count III), and one against Defendants Fatula, Bracken, and Doe for civil conspiracy (Count V). With regard to Count V it is unclear whether it is a civil rights claim or a state-tort claim. As Defendants point out, Kist's Count V is simply captioned as "Civil Conspiracy by All Defendants" and in the sequence of counts in the Amended Complaint, it is set forth between two state law tort claims, but in the section of Kist's Amended Complaint entitled "Rights Violated", Kist asserts that he "has a right under 42 U.S.C. § 1983 to be free of civil conspiracies." *See* M.S.M.D., p. 8 (quoting P.A.C., ¶ 12). Kist, in his response, characterizes the civil conspiracy claim as one made pursuant to 42 U.S.C. § 1983. *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Document 16) (hereinafter "B.O.M.D."), pp. 13-15. Despite Kist's argument, the court will consider Kist's claim of civil conspiracy as being both a civil rights claim and a state-tort claim in light of the ambiguity of the Amended Complaint itself.

*Heck* requires the analysis of two factors in order to determine whether suit is allowed. The first factor is whether the claim undermines the legality of the plaintiff's conviction itself or duration of the plaintiff's sentence. *See Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372-73, 129 L. Ed. 2d at 394-95.[5] If the court determines that the plaintiff's success on the § 1983 claim would not presumptively invalidate his underlying criminal conviction, the court need not consider the second factor, which is whether the

---

[5]*See, e.g.*, *Hill v. McDonough*, __U.S.__, 126 S.Ct. 2096, 2101, 165 L. Ed. 2d 44, 51 (2006); *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S.Ct. 1242, 1245, 161 L. Ed. 2d 253, 260 (2005); *Nelson v. Campbell*, 541 U.S. 637, 646, 124 S.Ct. 2117, 2124, 158 L. Ed. 2d 924, 934 (2004); *Edwards v. Balisok*, 520 U.S. 641, 643, 117 S.Ct. 1584, 1586, 137 L. Ed. 2d 906, 911 (1997); *Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety-Div. of State Police*, 411 F.3d 427, 437-38 (3d Cir. 2005), *cert. denied*, *Verniero v. Gibson*, 537 U.S.1035, 126 S.Ct. 1571, 164 L. Ed. 2d 326 (2006); *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005); *Learner v. Fauver*, 288 F.3d 532, 541-42 (3d Cir. 2002).

conviction or sentence was terminated favorably for the plaintiff, i.e. "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck*, 512 U.S. at 486, 114 S.Ct. at 2372-73, 129 L. Ed. 2d at 394.

Fourth Amendment claims are generally not presumed to undermine a conviction unless they "actually negate an element of the offense of which [the plaintiff] has been convicted." *Gibson*, 411 F.3d at 439 (citing *Heck*, 512 U.S. at 487 n.6). Kist pled *nolo contendere* to a charge of disorderly conduct, a crime characterized by a person engaging in some sort of physically or verbally threatening and/or disruptive conduct. *See* 18 Pa.C.S.A. § 5503(a). Turning to Count I, Kist's Amended Complaint sets forth therein a claim against Fatula for excessive force in violation of the Fourth Amendment. Kist's allegation that Fatula's use of force against him was unnecessary under the circumstances is predicated on that same allegation that Kist was in no way physically or verbally abusive towards Fatula or any other law enforcement officer. However, success on a claim of excessive force against Fatula does not necessarily invalidate the charge to which Kist pled no contest; a court could find that the degree of force employed by Fatula in effectuating the arrest was unreasonable under the circumstances and still determine that Kist's own conduct met the requisite elements for disorderly conduct. *See, e.g. Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) (holding that success on claim for excessive force under § 1983 would not impugn the validity of a criminal conviction for resisting arrest). Therefore, success on Count I would not undermine Kist's *nolo contendere* plea to disorderly conduct, and therefore, the defendants' motion to dismiss is denied as to this count.

However, Count III of Kist's Amended Complaint contains claims of false arrest against Fatula

and Bracken, in violation of the Fourth Amendment, predicated on Kist's assertion that Fatula lacked probable cause to arrest him, let alone charge him, because Kist alleges he never engaged in any threatening or disruptive conduct towards Fatula or anyone else at the scene of the incident. Kist's argument that Fatula lacked probable cause to arrest him would necessitate a finding that Kist did not engage in any sort of threatening behavior, which is a basic element of the charge to which he pled no contest. Therefore, because Kist's *nolo* plea would be undermined by his claim at Count III, this Court finds that *Heck* requires dismissal of this count unless Kist's criminal charge was terminated in his favor.

In light of the fact that no direct appeal has been filed in Kist's state criminal prosecution and no writ of *habeas corpus* granted, Count III must be dismissed. Kist plead *nolo contendere* to one count of disorderly conduct, for which he was placed on probation and fined $200; he was not sentenced to any term of imprisonment. *See* Defendants' Exhibit 1. Kist later attempted to withdraw his plea and was unsuccessful in doing so. *See* Defendants' Exhibits 4-6. Kist did not attempt to further appeal or protest the Cambria County Court of Common Pleas' denial of his motion to withdraw his *nolo* plea, so the actual plea has not been reversed on direct appeal, and the public records available to this Court do not reveal that Kist's conviction was "expunged", "declared invalid", or "called into question by a federal court's issuance of a writ of *habeas corpus*." *See Heck, supra.* Under Pennsylvania law, save for the fact that a *nolo* plea "cannot be used against the defendant as an admission in any civil suit for the same act," *Eisenberg v. Commonwealth*, 516 A.2d 333, 335 (Pa. 1995) (citations omitted), "a criminal defendant who offers a plea of *nolo contendere* to a given charge stands in the same shoes as one who has been convicted of the charged offense." *Moser v. Bascelli*, 879 F.Supp. 489, 493 (E.D.Pa. 1995) (citing *Commonwealth v. Perillo*, 626 A.2d 163, 166 (Pa. Super. Ct. 1993), *appeal denied*, 636 A.2d 633 (Pa.

10

1993)). In other words, a *nolo* plea itself does not meet the favorable termination requirement under *Heck. See, e.g. Reynolds v. Smythe*, 418 F.Supp.2d 724, 730 (E.D.Pa. 2006).

Count II of Kist's Amended Complaint contains claims against Fatula and Bracken, for interference with access to courts, in violation of the First Amendment, and Count V of Kist's Amended Complaint contains claims against all defendants for civil conspiracy. Success on these claims as alleged would mean successfully arguing that the defendants conspired together to fabricate evidence against Kist to support the baseless criminal charges against Kist and affirm the validity of his *nolo contendere* plea, thereby undermining any future attempt to pursue a civil action against Fatula. The validity of the charge to which Kist pled guilty would necessarily be impugned by these two claims because not only would the legality of the arrest be called into question, but also the subsequent criminal proceedings. Because of this, Counts II and V of Kist's Amended Complaint must be dismissed for the failure of Kist to have his criminal proceedings terminated in his favor.

Because success on Counts II, III, and V would undermine the charge of disorderly conduct to which Kist plead *nolo contendere*, because a plea of *nolo contendere* essentially constitutes a conviction for purposes of these proceedings, and because Kist's criminal charges have not been terminated in his favor, Counts II, III, and V are barred under *Heck* and therefore must be dismissed as a matter of law.

**B.     The "Collateral Attack" Rule**

"Generally, one who pleads guilty to a crime is bound by that conviction." *City of Phila. v. City of Phila. Civil Service Comm'n*, 895 A.2d 87, 95 (Pa. Commw. Ct. 2006) (citing *Dep't of Transp. v. Mitchell*, 535 A.2d 581, 584 (Pa. 1987)). Therefore, when bringing a state tort claim, a plaintiff is not then permitted to "collaterally attack" his underlying criminal conviction or "deny his criminal acts...."

11

*Id. See also Weaver v. Franklin County*; 918 A.2d 194, 202 (Pa. Commw. Ct. 2007) (citing *Perez v. Bureau of Comm'ns*, 854 A.2d 998, 1001 (Pa. Commw. Ct. 2004); *Francis v. Dep't of Transp.*, 746 A.2d 1193, 1195 (Pa. Commw. Ct. 2000). "[A] collateral attack on a judgement is an attack made by, or in, an action or proceeding that has an independent purpose, other than impeaching or overturning the judgment." 1 P.L.E. JUDGMENT § 201. In the present case, Kist has pled *nolo contendere*, rather than pleading guilty, to the crime of disorderly conduct; the difference between the two is that in a *nolo* plea, the criminal defendant does not expressly admit his guilt. However, it has long been consistently held in Pennsylvania that in terms of its effect on a case, a plea of *nolo contendere* is treated the same as a guilty plea.[6] In other words, a plea of *nolo contendere* is treated as if the defendant pled guilty to the crime charged. *See R.F. v. Dep't of Pub. Welfare*, 801 A.2d 646, 647 n.1 (Pa. Commw. Ct. 2002) (citing *Commonwealth v. Nelson*, 666 A.2d 714, 717 (Pa. Super. Ct. 1995)). Taken together, these cases stand for the principle that if a person pleads *nolo contendere* to a criminal charge, he cannot then collaterally attack his underlying plea by denying his criminal acts when bringing a civil claim.

---

[6]*See Commonwealth v. Leidig*, 850 A.2d 743, 745 (Pa. Super. Ct. 2004), *appeal docketed*, No. 527 MAL 2004 (Pa. Feb. 28, 2007); *Commonwealth v. Lewis*, 791 A.2d 1227, 1230 (Pa. Super. Ct. 2002); *Sontag v. Ward*, 789 A.2d 778, 780 (Pa. Commw. Ct. 2001); *Commonwealth v. Jefferson*, 777 A.2d 1104, 1107 n.3 (Pa. Super. Ct. 2001); *Commonwealth v. Miller*, 748 A.2d 733, 735 (Pa. Super. Ct. 2000); *Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa. Super. Ct. 1999); *Commonwealth v. Burkholder*, 719 A.2d 346, 349 n.4 (Pa. Super. Ct. 1998); *Commonwealth v. Nelson*, 666 A.2d 714, 717 (Pa. Super. Ct. 1995); *Commonwealth v. Perillo*, 626 A.2d 163, 165 (Pa. Super. Ct. 1993); *Commonw ealth v. Boatwright*, 590 A.2d 15, 19 (Pa. Super. Ct. 1991); *Commonwealth v. Cantanch*, 581 A.2d 226, 227 (Pa. Super. Ct. 1990); *Commonwealth v. Jackson*, 536 A.2d 105, 107 (Pa. Super. Ct. 1988); *Commonwealth v. Thomas*, 506 A.2d 420, 422 (Pa. Super. Ct. 1986); *Commonwealth v. Hayes*, 369 A.2d 750, 751 (Pa. Super. Ct. 1976); *Commonwealth v. Warner*, 324 A.2d 362, 362 (Pa. Super. Ct. 1974); *Commonwealth v. Boyd*, 292 A.2d 434, 435 (Pa. Super. Ct. 1974).

According to the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 5503(a):

A person is guilty of disorderly conduct if, with intent to cause public inconvenience annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a). Kist pled *nolo contendere* to a charge of disorderly conduct for the May 20, 2004 incident. Despite Kist's denial that he ever engaged in any actions on May 20, 2004 that could be classified as disorderly conduct, Kist's tort claims against the arresting officer constitute a collateral attack on his disorderly conduct conviction. This is because Kist's claim that Fatula's arrest, use of force to effectuate that arrest, and filing of criminal charges against him was unjustifiable, and therefore tortious, is predicated on Kist's assertion that he did not engage in any verbally or physically abusive conduct towards Fatula or any other law enforcement official at the scene of the May 20, 2004 incident. *See* P.A.C., ¶ 21. In essence, Kist is denying the criminal acts to which he essentially pled guilty in order to state a claim against Fatula for the state torts of assault and intentional infliction of emotional distress. These tort claims collaterally attack Kist's valid, underlying criminal conviction for disorderly conduct, therefore, they are legally barred. Accordingly, Kist's claims of assault at Count IV and intentional infliction of emotional distress at Count VI must be dismissed as a matter of law.

## III. CIVIL CONSPIRACY

### A. Civil conspiracy under Section 1983

Kist alleges a claim of civil conspiracy under 42 U.S.C. § 1983. *See* P.A.C., ¶ 12. "In order to prove a civil conspiracy under § 1983, [a] plaintif[f] must demonstrate (1) an agreement between two or

13

more conspirators (2) to deprive the plaintif[f] of a constitutional right, (3) under color of state law." *Glass v. City of Philadelphia*, 455 F.Supp.2d 302, 357 (E.D.Pa. 2006). In order to properly plead the existence of an agreement, "[t]he plaintiff must make specific factual allegations of combination...or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Financial Planning*, 800 F.Supp. 1244, 1250 (E.D.Pa. 1999).

Regarding a private actor's involvement in a conspiracy, the Court of Appeals for the Third Circuit has held that liability for a civil conspiracy under 42 U.S.C. § 1983 "may be imputed to those who have not actually performed the act denying the constitutional rights." *Concrete County Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (citations omitted). The defendants rely on *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa. 1997), which in turn relies on the persuasive authority of *Davis v. Nat. Bank*, 46 F.3d 24, 25-26 (7th Cir. 1994), in advocating that in order for a plaintiff to state a claim for conspiracy against a private actor under § 1983, the private actor must wrongfully influence the state actor's decision. M.S.M.D., pp. 21-22. However, such reliance by both the private defendants (Bracken and Doe)[7] and the Eastern District of Pennsylvania, mischaracterizes the holding in *Davis*; the Seventh Circuit only discusses the "wrongful influence" requirement of the private actor with respect to the test for a finding of state action in case of malicious prosecution. *Davis v. Union Nat. Bank*, 46 F.3d at 25-26. Kist does not have the right to sue any of the defendants for malicious prosecution under § 1983 for the lack of favorable termination, *see supra*, p. 11 and *Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Kist is not suing any of the defendants

---

[7]Presumably these are the private actors the Defendants refer to in their brief regarding this issue. M.S.M.D., pp. 21-22.

for malicious prosecution under § 1983. Moreover, Kist is not suing any of the defendants for civil conspiracy under § 1983 to maliciously prosecute. Therefore, the requirement of *Davis* that the private actor wrongfully influences the state actor's decision is inapplicable in this factual situation. The only requirement in the Third Circuit to establish the "color of law" element for the nature of a private actor's involvement in a civil conspiracy under § 1983 is that the private actor be a participant of said conspiracy. *See Abbott v. Latshaw*, 164 F.3d 141, 147-148 (3d Cir. 1998).

Despite the apparent presence of the "color of law" element for the private actors in this matter, Kist's Amended Complaint avers that the defendants conspired together to violate his civil rights, but Kist fails to allege any specific facts to establish the existence of any such agreement. *See infra*, pp. 21-22, 24-25. Kist has not pled or established an agreement or understanding between the defendants to carry out the alleged chain of events; his mere assertion that such a plot exists is simply not sufficient. Establishing the existence of an agreement is part of the *prima facie* case for civil conspiracy under 42 U.S.C. § 1983, and Kist has failed to do so. *See* P.A.C. ¶¶ 48, 49. The "conclusory allegations of concerted action" and the absence of facts establishing the conspiracy in the Amended Complaint does not satisfy the notice pleading requirements of the Federal Rules of Civil Procedure. *Abbott* at 148 (citations omitted). Therefore, his claim for civil conspiracy under § 1983 fails as a matter of law and the Court need not analyze the other elements of civil conspiracy. *Cf. Bell Atl. Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007) (requiring, in a § 1 Sherman Act claim, "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

## B.    Civil conspiracy under Pennsylvania law

The requirements necessary to state a claim for civil conspiracy under Pennsylvania law are nearly identical to those for conspiracy under § 1983. A plaintiff must allege: "1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (citing *McKeeman v. Corestates Bank*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000)). *See, e.g.*, *DeBlasio v. Pignoli*, 918 A.2d 822, 826 (Pa. Commw. Ct. 2007) (citations omitted); *Weaver v. Franklin County*, 918 A.2d 194, 202 (Pa. Commw. Ct. 2007) (citing *Brown v. Blaine*, 833 A.2d 1166, 1173 n.16 (Pa. Commw. Ct. 2003)). Proof of agreement and malicious intent are essential to stating a claim for conspiracy, and the fact that two or more people are acting to do something at the same time "'is not by itself an actionable conspiracy.'" *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. 1985) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979) (citations omitted)). It should also be noted that in Pennsylvania, a claim for civil conspiracy cannot be plead without alleging an underlying tort. *See, e.g.*, *Nicks v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1341-42 (Pa. Super. Ct. 1987)). Futhermore, following the rationale of various Pennsylvania state courts and federal appellate and district court decisions from other circuits, the Third Circuit determined that this particular requirement necessarily means that a claim for civil conspiracy under Pennsylvania law is not "independently actionable" and instead is a "means for establishing vicarious liability for the underlying tort." *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405-07 (3d Cir. 2000) (citations omitted). In other words, in Pennsylvania, success on a claim for civil conspiracy is

16

predicated on the existence of the underlying tort; if the underlying tort is found not to exist, the related claim for civil conspiracy to commit that tort necessarily fails. *See, e.g., id*; *McKeeman*, 751 A.2d at 660 (citing *Pelagatti*, 536 A.2d at 1342 (Pa. Super. Ct. 1987). However, unlike a claim for civil conspiracy under 42 U.S.C. § 1983, Pennsylvania law does not contain a "color of law" requirement with respect to the alleged conspirators.

Kist's Amended Complaint fails to meet the elements necessary to support a civil conspiracy claim under Pennsylvania law because he fails to allege facts sufficient to establish the requisite agreement. *See infra*, pp. 21-22, 24-25. Simply alleging the existence of an agreement or conspiracy is not enough. *See Bell Atl. Corp.*, *supra*. Therefore, Kist's claim for civil conspiracy under Pennsylvania law must be dismissed as a matter of law. Furthermore, with respect to the underlying state law tort claims for assault and intentional infliction of emotional distress, because Kist failed to state claims for those intentional torts, *see infra*, pp. 33-34, 39-41, Kist's claim for civil conspiracy under Pennsylvania law must also necessarily fail on that basis.

Because Kist has failed to establish the existence of a conspiracy either under 42 U.S.C. § 1983 or Pennsylvania law, Count V of Kist's Amended Complaint fails as a matter of law and must be dismissed.

## IV.    *PRIMA FACIE* ELEMENTS OF A SECTION 1983 CLAIM

In order to properly state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: "1) a person deprived him of a federal right; and 2) the person who deprived him of that right acted under color of state...law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L. Ed. 2d 572, 577 (1980))

17

## A.    "Color of law" requirement

The "under color of state law" element is a requisite of a *prima facie* case § 1983 claim. *Groman*, 47 F.3d at 638 (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L. Ed. 2d 40, 48 (1988)). As such, the plaintiff bears the burden of proving the existence of this *prima facie* element. *Id.* "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of state law." *Groman*, 47 F.3d at 638 (citing *Versage v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1363 (3d Cir. 1993). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49, 108 S.Ct. at 2255, 101 L. Ed. 2d at 49 (quoting *United States v. Classic*, 312 U.S. 299, 326, 61 S.Ct. 1031, 1041-42, 85 L.Ed. 1368, 1383 (1941)). *See also Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (citing *West*); *Bonenburger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997) (citing *West*).

Generally, acts of state or local officials that are related to their official duties, within the job description for their position, and/or are represented to be authorized because of [the nature of] their official position, are considered to have occurred under color of state law, regardless of whether the conduct is actually authorized by the state or in furtherance of state goals, or if that conduct is considered an abuse of their position. *See Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461-62, 102 L.Ed. 469, 484 (1988); *Bonenburger*, 132 F.3d at 23-24. However, "not all torts committed by state employees constitute state action, even if committed while on duty....[A] state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law." *Bonenburger*, 132 F.3d at 24 (citation

18

omitted).

With respect to a private actor, a defendant acts under color of state law if there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may fairly be treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L. Ed. 2d 477, 484 (1974) (citation omitted). *See also Adams v. Teamsters Local 115*, 214 Fed.Appx. 167, 172 (3d Cir. 2007). "A plaintiff may show such a nexus by establishing that the state and a private actor conspired with each other to violate [the plaintiff's]...constitutional rights." *Adams*, 214 Fed.Appx. at 172 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L. Ed. 2d 142, 151 (1970). Under these circumstances, a plaintiff would need to "alleg[e] the prerequisites of a civil conspiracy." *Melo v. Hafer*, 912 F.2d 628, 638 n.11 (3d Cir. 1990) (citations omitted). *See also Adams*, 214 Fed.Appx. at 172 (citing *Melo*) (other citations omitted). Simply put, "private parties acting in a conspiracy with a state official to deprive others of constitutional rights are also acting 'under color' of state law." *Melo*, 912 F.2d at 638 (citations omitted).

## 1. Counts I & III - Excessive force and false arrest, respectively, against Fatula in violation of Kist's Fourth Amendment rights pursuant to 42 U.S.C. § 1983

Counts I and III of Kist's Amended Complaint are claims pursuant to 42 U.S.C. § 1983 for excessive force and false arrest, respectively, against Fatula for alleged violations of Kist's Fourth Amendment rights. *See* P.A.C., pp. 8-9, 10-11. Kist specifically alleges that at the time of the May 20, 2004 incident, Fatula was working as a police officer for Jackson Township and under color of state law. *See* P.A.C., ¶ 33. Kist also alleges in his complaint that Fatula is currently employed as the Chief of the Jackson Township Police Department, and that Fatula was present at the scene of the accident that

19

occurred on May 20, 2004 in his capacity as the police chief to investigate the accident, and was recognized by Kist because he was dressed in his police uniform. *See* P.A.C., ¶¶ 6, 18. Kist alleges that the incident that occurred between him and Fatula on May 20, 2004, was first triggered by Kist approaching Fatula and inquiring about the accident. *See* P.A.C., ¶ 19. Kist alleges that without provocation, Fatula proceeded to physically and verbally assault him, ultimately removing him from the car and arresting him without any probable cause. *See* P.A.C., ¶¶ 20-22, 26, 42.

The Third Circuit pointed out in *Bonenburger* that public employees do not necessarily act under color of law when they commit a tort, even if they are on duty at the time, because if their interaction with the victim is wholly unconnected to their official duties, they are not considered to be acting under color of state law. *Bonenburger*, 132 F.3d at 24 (citation omitted). Thus, the rational inference to be drawn from those cases is that if public employees are on duty when they commit a tort, and if their interaction with the victim is rationally connected to their official duties, that is sufficient to constitute acting under color of law. *See Nadig v. Nagel*, 272 F. Supp 2d 509, 511 (E.D. Pa. 1003). In this case, at the time of the incident, Kist alleges a number of factors that, combined, contribute to an indication that Fatula was acting under color of law with respect to Kist's Fourth Amendment claims against him for excessive force and false arrest. Fatula was wearing a police uniform. *See Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999). The fact that he was wearing his police uniform supports a conclusion that Fatula was in fact on duty at the time, working in his official capacity as a police officer. *See West*, 487 U.S. at 50, 108 S.Ct. at 2255, 101 L. Ed. 2d at 50. Since it would certainly be within the scope of the official duties of a police officer to investigate car accidents, effectuate arrests and the detention of those that commit crimes, and use force against people if necessary, Fatula's actions in allegedly using force against Kist

and ultimately arresting him while in the course of investigating a car accident would definitely be related to his job as a police officer. In other words, Fatula's interactions with Kist with respect to Kist's Fourth Amendment rights are supported by the allegations in the Amended Complaint.

Therefore, Kist has pled sufficient facts to support the allegations of the color of law requirement for his claims against Fatula in Count I of his Amended Complaint, which is for excessive force in violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983, and Count III of his Amended Complaint, which is for false arrest in violation of Kist's Fourth Amendment rights pursuant to 42 U.S.C. § 1983.

### 2.  Count III - False arrest against Bracken in violation of Kist's Fourth Amendment rights pursuant to 42 U.S.C. § 1983

Count III of Kist's Amended Complaint also includes a claim against Bracken for false arrest in violation of Kist's Fourth Amendment rights. *See* P.A.C., pp. 10-11. Bracken is a supervisor of Jackson Township. *See* P.A.C., ¶ 7. Kist alleges that after Fatula had removed him from the car and handcuffed him, Bracken then proceeded to reach inside Kist's vehicle, remove a hammer, throw it on the ground, and claim that Kist had used the hammer as a weapon with which to assault Fatula. *See* P.A.C., ¶ 23. Kist alleges that Bracken did so in an effort to conspire with Fatula to bring baseless criminal charges against Kist. *Id.* Kist has not attempted to allege that Bracken was acting under color of state law or that his actions during the May 20, 2004 incident were in any way related to his official duties as supervisor for Jackson Township. In fact, Kist has not even indicated what some of Bracken's official duties might be.

Kist is attempting to establish the color of law requirement with respect to Bracken's involvement

21

in his alleged false arrest, in violation of his Fourth Amendment rights, by alleging the existence of a conspiracy between Fatula and Bracken. Both the Supreme Court and the Court of Appeals for the Third Circuit have held that private actors who conspire with public officials to violate someone's constitutional rights act under color of state law. *See Melo v. Hafer*, 912 F.2d at 638 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186, 66 L. Ed. 2d 185, 189 (1980)) (other citations omitted). However, pleading the existence of a conspiracy requires more than simply alleging that a conspiracy exists; a plaintiff needs to allege an agreement between "two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Hammond v. Creative Financial Planning*, 800 F.Supp. 1244, 1249 (E.D.Pa. 1999) (citation omitted). "The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Id.* Kist has not sufficiently plead the existence of a conspiracy between Fatula and Bracken.

Kist alleges that Bracken planted incriminating evidence and made incriminating statements against Kist "in an effort to conspire with defendant Fatula to bring baseless criminal charges against [Kist]...." P.A.C., ¶ 23. The key phrase in that sentence is "in an effort to conspire." Assuming that Bracken was in fact *attempting* to conspire with Fatula, Kist has not made any specific factual allegations of combination, agreement, or understanding between Fatula and Bracken for Bracken to falsely incriminate Kist. Kist has not alleged a reason, nor is one indicated, for Bracken's presence at the scene of the accident in the first place, let alone one that would indicate that he was present at the scene at the behest of, or on the basis of some sort of agreement with, Fatula. *See Adickes*, 398 U.S. at 152-60, 90 S.Ct. at 1605-09, 26 L. Ed. 2d at 151-55. Kist has not alleged any specific fact to suggest that Fatula said

22

anything or did anything to prompt Bracken to act as he did. The essence of a properly plead conspiracy is giving specific factual examples of some sort of agreement or understanding between the defendants to carry out the alleged chain of events, and from Kist's Amended Complaint, Bracken's actions in attempting to violate Kist's Fourth Amendment rights appear to be completely one-sided on Bracken's part, without any evidence of mutual understanding between Bracken and Fatula for Bracken to act on Fatula's behalf.

Because Kist has failed to properly plead the existence of a conspiracy between Fatula and Bracken to falsely arrest him in accordance with *Hammond* and *Melo*, Kist has failed to meet the necessary "under color of law" requirement for a private actor, i.e. Bracken, under § 1983. Therefore, Kist's claim against Bracken in Count III for falsely arresting Kist in violation of his Fourth Amendment rights pursuant to § 1983 must be dismissed as a matter of law.

### 3. Count II - Interference with access to court against Fatula and Bracken in violation of Kist's First Amendment rights pursuant to 42 U.S.C. § 1983

Kist alleges that Fatula conspired with Bracken to fabricate malicious evidence against him, and with Doe to change the docket number on his plea agreement for the purpose of preventing him from filing civil action against Fatula. *See* P.A.C., ¶¶ 38, 39. However, Kist fails to specifically allege that either Fatula *or* Bracken were acting under color of state law at the time of this conspiracy and fails to plead how, if at all, either of these defendant's actions are related to the powers and duties of their official positions as the Police Chief and Supervisor of Jackson Township, respectively. Fatula is a law enforcement officer who is in the business of arresting people and gathering evidence against them to support the crimes with which the police and prosecutors decide to charge them. If Kist alleged that

23

Fatula was violating his First Amendment right of access to court in order to support the supposedly baseless criminal allegations against Kist, because law enforcement officers have a vested interest in seeing criminals prosecuted, that might be sufficient to meet the color of law requirement under § 1983. Nevertheless, Kist alleged that Fatula and Bracken's motivation behind the violation of Kist's First Amendment rights was to help Defendant Fatula avoid a civil lawsuit. *See* P.A.C., ¶ 38. Law enforcement officers, township supervisors, and employees of the district attorney are not in the official business of avoiding civil lawsuits. Pursuant to Plaintiff's allegations, Fatula was clearly pursuing private motives that were unconnected with the execution of his official duties as Chief of Police for Jackson Township and therefore he was not acting under color of law. *See Bonenburger*, 132 F.3d at 24. It can only be inferred that Bracken and Doe's actions were fueled by private motives to help their co-actor, Fatula, remain outside the scope of civil liability. Kist has failed to allege that either Bracken's actions in violating Kist's First Amendment rights, or his motivation in helping Fatula to avoid a civil suit lawsuit, constituted, by themselves, acting under color of law or were related to the official duties of a Supervisor for Jackson Township.

Accordingly, Kist has failed to establish that Fatula, Bracken, or Doe were acting under color of law with respect to their alleged interference with Kist's First Amendment right of access to court for the purposes of preventing Kist from suing Fatula in civil court. Therefore, it is unnecessary to determine whether Kist has in fact sufficiently plead the existence of a conspiracy between Fatula and Bracken with regard to the alleged fabrication of malicious evidence against Kist because neither Fatula nor Bracken was acting under color of state law with respect to that particular allegation. Nevertheless, while Kist has alleged that a conspiracy existed between Fatula and Bracken, *see* P.A.C., ¶ 38, and Fatula and Doe,

*see* P.A.C., ¶¶ 29-30, 38-39, he has failed to allege sufficient facts of an agreement or plan or combination to establish the existence of such a conspiracy between any of the defendants.

In order to establish that Fatula was acting under color of state law with respect to the alleged switching of the docket numbers of Kist's plea agreement, Kist would need to sufficiently plead factual allegations that: a) Fatula's unknown co-conspirator in the Cambria County District Attorney's Office, Doe, was acting under color of state law, and b) a conspiracy between Fatula and Doe existed to switch the docket numbers. Kist has not alleged that Doe himself was acting under color of state law, nor has he provided any factual allegations that would indicate Doe's position with the District Attorney's Office and that his supposed switching of the docket numbers would be within the scope of his official duties, thereby supporting an allegation that he was acting under color of state law. Therefore, it is unnecessary to determine whether a conspiracy between Fatula and Doe to carry out this chain of events existed because of Kist's failure to allege actions under color of law by Doe.

Additionally, Kist has also failed to make specific factual allegations of an agreement or plan or combination between the three defendants to establish the existence of a conspiracy between them.

Kist has failed to meet the color of law requirement for both Fatula and Bracken under § 1983 as well as allege an underlying agreement among the Defendants in support of his conspiracy allegation, therefore, Kist's claims against Fatula and Bracken in Count II for interfering with his right of access to court in violation of his First Amendment rights must be dismissed as a matter of law.

## B.    Deprivation of a Constitutional right

"To make out a prima facie case under [42 U.S.C.] § 1983, [a]...plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." *Berg v. County of Allegheny*, 219

25

F.3d 261, 268 (3d Cir. 2000) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)). "[I]n evaluating a [§]...1983 claim," it is necessary "to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 1714 n.5, 140 L. Ed. 2d 1043, 1054 n.5 (1998)). If the plaintiff cannot "demonstrate a violation of a constitutionally protected interest," his claim under § 1983 necessarily fails. *Russoli v. Salisbury Twp.*, 126 F.Supp.2d 821, 859 (E.D. Pa. 2000). *See also Rini v. City of Pittsburgh*, No. 2: 05cv0198, 2006 WL 2711653, \*4, 2006 U.S. Dist. LEXIS (W.D. Pa. Sept. 21, 2006).

## 1.   Fourth Amendment

Kist asserts his right under the Fourth Amendment to be free from unreasonable seizures without probable cause, a right under the Fourth Amendment not to have baseless criminal charges brought against him without probable cause, and a right under the Fourth Amendment to be free from excessive force by law enforcement officers. *See* P.A.C., ¶¶ 11, 12, 9, 35. Additionally, Kist alleges that Fatula arrested and charged him with crimes without probable cause to believe that he had committed a crime, and that Fatula used excessive force against him in the altercation that ultimately led to his arrest, both actions being in violation of his Fourth Amendment rights. *See* P.A.C., ¶¶ 42, 34, 35, 9. These various allegations can be placed into two classifications: the right to be free from excessive force and the right to be free from false arrest.

### a.   Excessive force

Kist correctly relies on *Abraham v. Raso* in support of his assertion that when the alleged

26

excessive force violation arises from an arrest, the Fourth Amendment is implicated. B.O.M.D., p. 12 (citing *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). In *Abraham*, the Third Circuit "note[d] that excessive force in the course of an arrest is properly analyzed under the Fourth Amendment [and]...not [as a]...substantive due process right [right]." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870-71, 104 L. Ed. 2d 443, 453-54 (1989)). In order to state a claim for excessive force under the Fourth Amendment, a plaintiff must demonstrate that (1) there was a seizure, and (2) the seizure was unreasonable. *See Abraham*, 183 F.3d at 288 (citations omitted). *See also Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (citing *Abraham*); *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (citing *Abraham*). "A seizure occurs 'whenever an officer restrains the freedom of a person to walk away.'" *Curley v. Klem*, 298 F.3d at 279 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699, 86 L. Ed. 2d 1, 7 (1985)). In order to determine whether a seizure was reasonable, a court must evaluate "whether the officer['s] actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S. Ct. at 1872, 104 L. Ed. 2d at 456 (citing *Scott v. United States*, 436 U.S. 128, 137-139, 98 S. Ct. 1717, 1723-24, 56 L. Ed. 2d 168, 177-78 (1978) (other citations omitted)). *See also Marasco*, 318 F.3d at 515 (citing *Graham*); *Curley*, 298 F.3d at 279 (citing *Graham*).

Kist has alleged sufficient facts to establish that there was a seizure of his person by Fatula. There is no question that at some point, Kist was physically restrained, handcuffed, and arrested by Fatula, which certainly falls well within the Third Circuit's definition of what constitutes a seizure. Kist has also alleged that without any warning or provocation, Fatula punched him in the face, sprayed him with mace, and forcibly removed him from his vehicle, *see* P.A.C., ¶¶ 20-22, which, taken together, would support

27

a claim of "unreasonableness". Whether the force was reasonable is a question of fact. *See Graham v. Connor*, 490 U.S. at 396, 109 S. Ct. at 1871-72, 104 L. Ed. 2d at 455. Kist's right to be free from excessive force is clearly established under the Fourth Amendment, *see Saucier v. Katz*, 533 U.S. 201-02, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281-82 (2001) (citing *Graham, supra*), and Kist has pled facts supporting his contentions that there was a use of force in effectuating a seizure of his person, and that the force used was unwarranted. Therefore, Kist has sufficiently plead a cause of action for excessive force under the Fourth Amendment.

### b.     False arrest

Kist also correctly asserts that "the proper inquiry in a § 1983 claim based on false arrest...is not whether the person arrested actually committed the offense, but whether the arresting officers had probable cause to believe that the person arrested had committed the offense." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). False arrest is considered to be a subspecies of false imprisonment, *see Wallace v. Kato*, _U.S._, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973, 980, and "a false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman*, 47 F.3d at 636 (citations omitted). Kist has pled sufficient facts to establish that he was arrested on May 20 2004; there is no question that he was handcuffed, placed under arrest, and ultimately charged with, among other things, assault, reckless endangerment, and resisting arrest. Whether there was probable cause to arrest is generally a question of fact. *See Groman*, 47 F.3d at 635 (citations omitted). Kist has also pled facts supporting his contention that probable cause to arrest did not exist; Kist alleges that he merely approached Fatula and

inquired about the condition of his "lady friend" who had been in a car accident, *see* P.A.C., ¶¶ 17, 19,

and that he was in no way "belligerent or disobedient" towards Fatula, *see* P.A.C., ¶ 21. Yet Kist was

nevertheless struck in the face and sprayed with mace by Fatula, subsequently handcuffed, and ultimately

charged with various criminal offenses, *see* P.A.C., ¶¶ 20-22, 26. Kist has sufficiently pled facts to

support his claim for false arrest under the Fourth Amendment.

For purposes of their Motion to Dismiss pursuant to Rule 12(b)(6), Fatula and Bracken have not

raised any immunity defense with respect to Kist's Fourth Amendment claims for excessive force and

false arrest, nor have they claimed that Kist failed to allege a violation of a clearly established

constitutional right with respect to Kist's Fourth Amendment claims. The right to be free from excessive

force is clearly established under the Fourth Amendment, as is the right to be free from false arrest; Kist

has sufficiently plead the elements of both of those claims.

## 2. First Amendment – Interference with right of access to court

Kist alleges that Fatula and Bracken fabricated malicious evidence against Kist to prevent him

from bringing a civil action against Fatula, that Fatula and Doe conspired together to change the docket

number on Kist's plea agreement to prevent him from bringing any claims of malicious prosecution

against Fatula, and that through such actions, Fatula, Bracken, and Doe violated Kist's First Amendment

right to petition the government and have his claims heard in court. *See* P.A.C., ¶¶ 37-39.

The purpose of recognizing a claim for constitutional right of access to the courts[8] "is to provide

---

[8]The Supreme Court has held that the right of access to courts originates in the right to petition under the First Amendment. *See BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25, 122 S. Ct. 2390, 2395-96, 153 L. Ed. 2d 499, 510-11 (2002) (citations omitted).

29

some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15, 122 S.Ct. 2179, 2186-87, 153 L. Ed. 2d 413, 424 (2002). The right of access to courts is predicated on the existence of a "'nonfrivolous,' 'arguable' underlying claim," "without which a plaintiff cannot have suffered injury" by losing out on the opportunity to fully litigate that claim in court. *Harbury*, 536 U.S. at 415, 122 S.Ct. at 2186-87, 153 L. Ed. 2d at 424 (citing *Lewis v. Casey*, 518 U.S. 343, 353, 116 S.Ct 2174, 2181, 135 L. Ed. 2d 606, 619 and n.3 (1996)). Therefore, in order to bring a claim for deprivation of access to courts against a public official, a plaintiff must demonstrate actual injury, which requires two allegations: (1) a valid underlying cause of action separate from the right of access claim, and (2) frustration or hindrance of the litigation caused by the public official. *See Harbury*, 546 U.S. at 415, 122 S.Ct. at 2187, 135 L. Ed. 2d at 424. *See also Jones v. Brown*, 461 F.3d 353, 359-60 (3d Cir. 2006); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (citing *Lewis*, 518 U.S. 343 at 349-50, 116 S.Ct. at 2179, 135 L. Ed. 2d at 616-17). Accordingly, if a plaintiff fails to properly plead either the existence of a valid claim separate from the right of access, or frustration of that claim, the claim for interference with access to courts must be dismissed.

Here, Kist fails to establish "actual injury". With respect to the claim that Fatula's actions in switching the docket numbers on Kist's plea agreement were committed to prevent Kist from later suing Fatula for malicious prosecution, Kist fails to allege both a valid, underlying separate cause of action and frustration in litigating that claim. In order to state a claim for malicious prosecution under § 1983,

> a plaintiff must allege that (1) the defendants initiated the criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.

30

*Benard v. Washington County*, 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006) (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005)). The Supreme Court has stated that "the cause of action for malicious prosecution *does not accrue* until the criminal proceedings have terminated in the plaintiff's favor...." *Heck v. Humphrey*, 512 U.S. 477, 489, 114 S.Ct. 2364, 2374, 123 L. Ed. 2d 383, 396 (1994) (emphasis added) (internal citations omitted). The Supreme Court has also held that "'[accrual occurs] when the plaintiff has a present and complete cause of action,'....that is, 'when the plaintiff can file suit and obtain relief'" *Wallace v. Kato*, __U.S.__, 127 S.Ct. 1091, 1095, 166 L. Ed. 2d 973, 980 (2007) (citations omitted). Taken together, these precedents stand for the principle that the cause of action for malicious prosecution does not exist at all until the criminal proceedings have been terminated in favor of the plaintiff, and the plaintiff does not have the right to sue for malicious prosecution until such an occurrence.

In this case, the criminal proceedings against Kist have not yet been terminated in his favor; a *nolo contendere* plea under Pennsylvania law does not qualify as favorable termination for purposes of bringing a malicious prosecution suit under § 1983.[9] *See Reynolds v. Smythe*, 418 F. Supp. 2d 724, 731-32 (E.D. Pa. 1996); *Smith v. Holtz*, 879 F.Supp. 435, 443 n.1 (M.D.Pa. 1995) (citations omitted), *aff'd*, 87 F.3d 108 (3d Cir. 1996); *Haefner v. Lancaster County*, 520 F.Supp. 131, 133 n.10 (E.D. Pa. 1981) (citing *Davis v. Chubb/Pacific Indem. Group*, 492 F.Supp. 89, 91 (E.D.Pa 1980)). Kist seems to be claiming that Fatula's switching of the docket numbers on his plea agreement prevented a cause of action

---

[9]A prosecutor's reduction or withdrawal of criminal charges as part of a plea agreement "with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim." *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996) (citing *Alianell v. Hoffman*, 176 A. 207 (Pa. 1935)).

31

for malicious prosecution from ever developing because Kist's plea of *nolo contendere* to the May 20, 2004 charges did not constitute termination of the charges in his favor. Therefore, Kist argues he is precluded from establishing the requisite element of favorable termination.

However, before the alleged switching of the docket numbers, Kist did not have a present cause of action for malicious prosecution. Assuming Kist's argument that Fatula preemptively injured Kist's ability to establish a valid, underlying legal claim for malicious prosecution is correct, the injury requirement contemplated within a claim for interference with access to court is frustration in *litigating* a valid cause of action, not frustration in *establishing* a valid cause of action. Kist asserts that the changing of the docket number on his plea agreement "interfere[s] with [his]...right to bring his claims in federal court and as a result, infringe[s] [his]...right to access the courts for a redress of his grievances as...guaranteed by the First Amendment...." *See* B.O.M.D., p.9. However, Kist misses the point; his right of access to bring his claims in court is predicated on a freestanding right to sue on an underlying claim. *See Harbury*, 536 U.S. at 414-15, 122 S. Ct. at 2186, 153 L. Ed. 2d at 424. Kist did not have the right to sue Fatula for malicious prosecution at the time Fatula allegedly switched the docket number of Kist's plea agreement, nor does he currently possess that right. *See supra*, p. 31. If a right to bring a claim does not exist, Kist "cannot have suffered injury by being shut out of court" with respect to that particular claim. *See Harbury*, 536 U.S. at 415, 122 S. Ct. at 2186-87, 153 L.Ed. 2d at 424. Kist has also failed to plead valid causes of action against Bracken for false arrest, against Fatula for assault and intentional infliction of emotional distress, and against all defendants for civil conspiracy.

In addition to failing to establish valid underlying causes of action for malicious prosecution, false arrest (against Bracken), civil conspiracy, assault, *see infra*, pp. 33-34, and intentional infliction of

32

Case 3:06-cv-00067-KRG Document 23 Filed 08/17/07 Page 33 of 42

emotional distress, *see infra*, pp. 39-41, Kist also fails to meet the requisite element of frustration on the part of the officials in bringing any of his claims against any of the defendants. Kist had not previously brought, or attempted to bring, civil suit against Fatula. Kist has not alleged that he was previously frustrated in bringing civil suit against Fatula, nor has he alleged that he was intimidated from doing so in any way. Because this is the very first time Kist is litigating these issues, there is no way of knowing yet whether the defendants' alleged deceptive actions will frustrate Kist's claims, and this court is not in the business of deciding hypotheticals. In addition to the fact that Kist never previously attempted to file any federal or state claims against Fatula, said federal claims (save the one for excessive force) are legally barred under the *Heck* doctrine because they would impugn the validity of his underlying conviction, and both of his state tort claims are similarly barred because they constitute a collateral attack on his conviction, *see City of Phila. v. City of Phila. Civil Serv. Comm'n*, 895 A.2d 87, 95 (Pa. Commw. Ct. 2006), *appeal denied*, 909 A.2d 306 (Pa. 2007) (per curiam). *See supra*, pp. 11, 13. Kist was represented by counsel at his *nolo* plea, he was represented by counsel when he attempted [and failed] to withdraw his *nolo* plea, and he is represented by counsel now. Because Kist has not even attempted to appeal the denial of his motion to withdraw his *nolo contendere* plea to the May 20, 2004 charges, what is currently frustrating his federal and state claims against Fatula are the *Heck* (for § 1983 claims) and collateral attack (for state tort claims) bars and Kist's failure to make any attempt to lift them.

Kist has failed to establish valid underlying claims for malicious prosecution, false arrest, civil conpsiracy, assault, and intentional infliction of emotional distress, and has failed to plead the requisite element of frustration in any of his present claims against Fatula. Therefore, Kist has failed to establish an injury to his First Amendment right of access to court, and accordingly, Count II of Kist's Amended

33

Complaint must be dismissed as a matter of law.

## V.     PLAINTIFF'S STATE LAW TORT ACTIONS

### A.     Kist's state tort claims

#### 1.     Count IV - Assault against Fatula

Kist contends that Fatula's contact with his body during the May 20, 2004 altercation was offensive and uninvited, that it constituted assault because there was no justifiable reason to strike Kist, and because there was no justifiable reason to strike the Kist, Fatula acted outside the scope of his employment in doing so because his job as Chief of Police does not include striking people who merely are inquiring about the location of a car accident victim. *See* P.A.C., ¶ 44.

"Under Pennsylvania law, an assault occurs when one acts with the unprivileged intent to put another in reasonable and immediate apprehension of a harmful or offensive conduct and which does cause such apprehension." *Stilley v. Univ. of Pittsburgh*, 968 F.Supp. 252, 259 (W.D. Pa. 1996) (citations omitted). By comparison, "[b]attery occurs when a person acts intending to cause a harmful or offensive *contact* with the person of another or a third person," and such contact results. 1 P.L.E. TORTS § 51 (emphasis added) (citing *Sciotto ex rel Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 577 (E.D. Pa. 1999)). Note that the definition of assault in Pennsylvania does not have same the physical contact requirement necessary to state a claim for battery. Therefore, it is unnecessary for Kist to allege offensive bodily contact to support his cause of action for assault because that is not an element of the claim. However, what *is* an element required to state a claim for assault is being placed in imminent apprehension of physical injury, which Kist fails to allege at any point in his complaint. Kist is claiming that he engaged in no provocative action towards Fatula and instead was simply inquiring about the

34

location of his loved ones, and because of this, he did not expect, nor did he see coming, Fatula's alleged attack. *See* P.A.C., ¶¶ 19-21, 45. At no point in his complaint has Kist claimed anything to the effect of fearing that he was about to be battered, instead, repeatedly characterizing Fatula's actions as "without provocation", *id.* at ¶ 20, "reason or provocation", *id.* at ¶ 21, or "justifiable reason...to strike the plaintiff", *id.* at ¶ 44. Kist does not claim, nor can we infer, that he expected Fatula to act in the manner that he did because, as Kist has repeatedly asserted, he did nothing to provoke Fatula when he approached him at the scene of the accident. While Kist has stated a tort claim for battery, Kist is not actually claiming Fatula committed battery, but rather, assault. Kist has failed to state a claim for assault, and therefore, Count IV of Kist's Amended Complaint should be dismissed as a matter of law.

However, if the court allows Kist to amend his complaint to include a claim of battery against Fatula, the issue arises as to whether Fatula can assert immunity from tort liability. As Fatula points out, Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, *et seq.*, provides immunity to local agencies from tort liability for injuries caused by the agency, one of its employees, or some other person, 42 Pa.C.S.A. § 8541, and such immunity extends to an employee of the local agency if he is acting within the scope of his official duties, 42 Pa.C.S.A. § 8545.

If a claim is brought against a municipal employee in his official capacity, that claim is treated as if it were against the municipal entity for whom the employee works. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301, 309 (1991). Under the Political Subdivisions Tort Claims Act, a municipality's liability is only waived for injury caused by *negligent* acts, and only if those acts of the agency or their employees falls under one of the following eight categories: (1) "operation of any motor vehicle...."; (2) care, custody or control of personal property...."; (3) "care, custody or control of

35

real property...."; (4) "dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems...."; (5) "dangerous condition of [utility services facilities]"; (6) "dangerous condition of streets...."; (7) "dangerous condition of sidewalks...."; and (8) "care, custody or control of animals...." 42 Pa.C.S.A. § 8542. Paragraph (a)(2) of that section specifies that "'negligent acts' shall not include acts or conduct which constitutes...willful misconduct." *Id.* The Third Circuit has held that the term "willful misconduct" under the Political Subdivisions Tort Claims act is synonymous with "intentional tort". *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994); *Bright v. Westmoreland County*, 443 F.3d 276, 287 (3d Cir. 2006); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)). Municipal employees, if sued in their official capacity, are entitled to assert the same immunity defenses available to their municipal entity employer. *See* 42 Pa.C.S.A. § 8546. In short, municipalities or agencies, including municipal employees if sued in their official capacity, are immune from suit for *intentional* torts.

Pursuant to 42 Pa.C.S.A. § 8550, if a claim is brought against a municipal employee in his individual capacity, his immunity from tort liability is abrogated if his alleged acts constitute "willful misconduct." *See Diaz v. Houck*, 632 A.2d 1081, 1085 (Pa. Commw. Ct. 1993) (citing *Williams v. City of Phila.*, 569 A.2d 419, 421 (Pa. Commw. Ct. 1990)). Therefore, following the reasoning of the preceding court holdings, if a municipal employee is sued for an intentional tort, he is not entitled to assert the defense of official immunity.

Kist is alleging several intentional state law torts, so the existence of Fatula's immunity protection turns on whether Kist is suing Fatula in his official capacity or individual capacity. If Fatula is being sued in his official capacity, he entitled to immunity under the Political Subdivision Tort Claims Act. If Fatula

36

is being sued in his individual capacity, he does not possess the immunity provided for under the Tort Claims Act. Kist's Amended Complaint does not specify in which capacity he is suing Fatula; however, in a decision upheld by the Supreme Court, the Third Circuit determined that plaintiffs that did not specify in which capacity they were suing a governmental official signified an intent to sue that official in her individual capacity because they only listed the named official in their complaint and not the State of Pennsylvania, and they were only seeking relief from the official and not the State. *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd, Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L. Ed. 2d 301 (1991). The reasoning behind the Third Circuit's determination is that if an official is sued in his individual capacity, he ought to be put on notice that his personal assets are at stake. *Melo*, 912 F.2d at 636 n 7. In this case, Kist is not suing the Jackson Township Police Department or Jackson Township. Kist is not seeking any kind of relief from the Jackson Township Police Department or Jackson Township. With respect to the claims he brings against Fatula, Kist has been very specific in his Amended Complaint that he is seeking damages from *Fatula* personally, *see* P.A.C., pp. 9, 10, 11,12, 13, 14; he has not asked for anything from Jackson Township. Fatula is certainly on notice that Kist is trying to go after his personal assets. Following the Third Circuit's reasoning, we hold that Kist has signaled an intent to sue Fatula in his individual capacity, and we will treat this suit accordingly. Because Fatula is being sued for intentional torts in his individual capacity, he is not entitled to assert the defense of official immunity.

**2.    Count VI - Intentional infliction of emotional distress against Fatula**

In Pennsylvania, in order to state a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct of defendant must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must cause emotional distress; and (4) the distress must be

37

severe. *See, e.g., Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (citations omitted).[10] Stating a claim for intentional infliction of emotional distress in Pennsylvania also requires alleging some sort of physical injury related to the distress. *See Rolla v. Westmoreland Health Sys.*, 651 A.2d 160, 163 (Pa. Super. Ct. 1994). *See also Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citing *Rolla*, 651 A.2d at 163). Additionally, Pennsylvania law requires a plaintiff to present "competent medical evidence" of the emotional distress he alleges to suffer from in order to recover on a claim for intentional infliction of emotional distress. *See Kazatsky v. King David Memorial Park*, 527 A.2d 988, 995 (Pa. 1987). In order to qualify as extreme and outrageous, the alleged conduct must "'go beyond all possible bounds of decency, and...be regarded as atrocious...and utterly intolerable in a civilized society.'" *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buzcek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987). The Pennsylvania Superior Court has held that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous." *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. 1993) (citations omitted). *See also Cox*, 861 F.2d at 395 (citations omitted). "This standard imposes a very high threshold for liability[,] ....extend[ing beyond] mere insults, indignities, threats,

---

[10]Pensylvania courts have not expressly adopted the Restatement (Second) of Torts § 46 as its standard for the tort of intentional infliction of emotional distress. *See, e.g. Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). However, Pennsylvania courts "*have* cited [that]...section as setting forth the minimum elements necessary to sustain such a cause of action," *id.* (emphasis added) (citations omitted), and the Court of Appeals for the Third Circuit has recognized that Pennsylvania will "impose liability" for such a tort and that *Chuy* is binding in the Third Circuit to the extent that it is not inconsistent with Pennsylvania law, *see Williams v. Guzzardi*, 875 F.2d 46, 51-52 (3d Cir. 1989); *see also Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir.), *cert. denied*, 496 U.S. 926, 110 S. Ct. 2620, 110 L. Ed. 2d 641 (1990) (citing *Williams*); *Clark v. Falls*, 890 F.2d 611, 623 (3d Cir. 1989) (citing *Williams*).

annoyances, petty oppressions," *Marley v. Bd. of Pensions of the Presbyterian Church*, 33 Phila.Co.Rptr. 340, 352 (Pa.Com.Pl. 1997), *aff'd without opinion*, 706 A.2d 1264 (Pa. Super. Ct. 1997) (citation omitted), and "the indignities and insensitivity that too often taint our daily lives," *id.* (citation omitted).

Fatula cites *Rolla* and *Martin v. Comunale*, No. 03-CV-06793, 2006 WL 208645, 2006 U.S. Dist. LEXIS 1692 (E.D. Pa. Jan. 18, 2006) in support of the proposition that, under Pennsylvania law, the physical injury requirement for a claim of intentional infliction of emotional distress demands that the physical injury be caused by the emotional distress, rather than simply accompany it. *See* M.S.M.D., p. 23. However, the cases Fatula relies on stand for no such proposition. In *Bingaman v. Buhay*, the District Court for the Middle District of Pennsylvania was recently faced with the exact same proposition that Fatula asserts here, that the physical injury must be caused by the emotional distress in a claim for intentional infliction of emotional distress. *Bingaman v. Buhay*, No. 4 06-CV-2144, 2007 WL 707026, *5, 2007 U.S. Dist. LEXIS 14789, *14-*15 (M.D. Pa. March 2, 2007). The *Bingaman* court determined that it had "not been directed to any case that stands for this proposition," 2007 WL 707026 at *5, 2007 U.S. Dist. LEXIS 14789 at *15, and that the cases the *Bingaman* defendants relied on, specifically *Rolla* and *Martin* (*see* Buhay's Memorandum in Support of Motion to Dismiss, 2007 WL 522547), "simply stand for the proposition that there must be some physical injury in addition to the emotional distress," 2007 WL 797026 at *5, 2007 U.S. Dist. LEXIS 14789 at *15.

In *Martin v. Comunale*, the District Court for the Eastern District of Pennsylvania granted the defendant's motion for summary judgment on the plaintiff's claim for intentional infliction of emotional distress because the plaintiff failed to allege *any* attendant physical injury. *Martin v. Comunale*, 2006 WL 208645 at 2. The *Martin* court's reasoning contains no mention that the decision to grant defendant's

motion was based on plaintiff's failure to establish that the physical injury was the result of the emotional distress. In *Rolla*, the Pennsylvania Superior Court *did* affirmatively state that because the plaintiff failed to allege that he suffered any physical injury as a result of his emotional disturbance, the court was dismissing the complaint. *Rolla*, 651 A.2d at 163. However, it is clear that the *Rolla* court's decision was predicated on a lack of any physical injury, rather than a lack of a causal link between the emotional distress and the non-existent physical injury. This is apparent because the *Rolla* court had stated in the preceding paragraph its holding that Pennsylvania law requires an allegation of physical injury to accompany claims of both intentional and negligent infliction of emotional, *see id.*, and that the *Rolla* plaintiff had not in fact alleged *any* physical injury. Therefore, Fatula's physical injury argument fails.

With respect to the element of emotional distress, Kist claims that as a result of this incident, he "incurred embarrassment, humiliation[,] and loss of sleep." P.A.C., ¶ 51. Kist also claims that as a result of the altercation with Fatula, he suffered a black eye and some other bruising and scarring. *Id*. However, Kist has not specifically alleged that the distress he suffered was severe, nor has he sufficiently plead facts that would support an inference that the distress he suffered was the kind of unbearable mental anguish that rose to the level of severe emotional distress.

In *Chuy*, the Third Circuit held that in order for the emotional distress to be profound enough to be considered severe, it had to be beyond that which "'any reasonable man could be expected to endure.'" *Chuy*, 595 F.2d at 1276 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. j). In *Moolenaar v. Atlas Motor Inns, Inc*., the plaintiff's allegations that he experienced minor weight loss due to anxiety, altered sleeping patterns, and embarrassment were not considered sufficient to meet the requisite level of intensity that a reasonable person would not be expected to endure. *Moolenaar v. Atlas Motor Inns, Inc.*,

616 F.2d 87, 88 (3d Cir. 1980) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. j). Here, Kist has alleged similarly minor physical and emotional impact.

Under the circumstances as alleged, Fatula's actions in physically restraining Kist, and arresting and charging him with disorderly conduct, while a possible overreaction on his part, do not rise to the level of atrocious and utterly intolerable, especially since Kist has alleged only minor physical and emotional injuries. In essence, Kist's complaint does not rise to the necessary level of outrageousness to state this claim. As such, Kist has failed to state a claim for intentional infliction of emotional distress, and as such, Count VI must be dismissed as a matter of law.

## CONCLUSION

In conclusion, with respect to Fatula, Kist has failed to state claims for interference with access to courts, civil conspiracy, assault, and intentional infliction of emotional distress. With respect to Bracken, Kist has failed to state claims for false arrest, interference with access to court, and civil conspiracy. With respect to Doe, Kist has failed to state a claim for civil conspiracy. Additionally, Kist is legally barred under the *Heck* doctrine from bringing suit for false arrest, interference with access to courts, and civil conspiracy because those § 1983 claims would impugn a valid underlying criminal conviction. Kist is similarly barred from bringing suit for assault and intentional infliction of emotional distress because they constitute collateral attacks on his conviction. The only remaining cause of action in Kist's Amended Complaint is his Count I claim of excessive force against Fatula.

In accordance with *Fletcher-Harlee v. Pote Concrete Contractors*, 482 F.3d 247, 251-53 (3d Cir. 2007), the Court notes this matter is a civil rights actions and that the Plaintiff should be granted leave to amend his amended complaint as to any dismissed counts "unless doing so would be inequitable or

41

futile." In light of the fact that Counts II, III, and V are barred by *Heck* and Counts IV and VI are collateral attacks upon Kist's conviction, no amended complaint can overcome these legal bars to recovery and the Court does not need to offer Kist the opportunity to amend his amended complaint *sua sponte*.

An appropriate Order follows.

**AND NOW**, this 17th day of August, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT: Counts Two, Three, Four, Five and Six are dismissed WITH PREJUDICE; IT IS FURTHER ORDERED THAT Defendants Bracken and Doe are DISMISSED as parties because of the Court's ruling on Counts Two through Six; IT IS FURTHER ORDERED THAT Defendant Fatula shall file an answer to Count One of the Amended Complaint on or before September 6, 2007.

**BY THE COURT:**

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

42